BRYAN, Justice.
 

 Raymond Adams has petitioned this Court for the writ of mandamus directing the Autauga Circuit Court (1) to remove Clifford Wayne Cleveland II (“Chip” or “Chip Cleveland”) as coexecutor of the estate of Clifford Wayne Cleveland (“the estate”), (2) to vacate its order prohibiting the estate from hiring an attorney or a certified public accountant (“CPA”), (3) to compel Chip and his sister, Celeste Cleveland Minor, to produce property and assets of the estate that are in their possession, and (4) to impose sanctions on Chip and Minor. For the reasons set forth below, we deny the petition.
 

 Facts and Procedural History
 

 Clifford Wayne Cleveland died on March 28, 2014. In his will, Cleveland named his law partner Louis C. Colley and business partner Adams as eoexecutors of the estate. Colley and Adams petitioned the Autauga Probate Court to probate the estate and were granted letters testamentary. On April 30, 2014, the Autauga Circuit Court granted Chip and Minor’s motion, as beneficiaries under Cleveland’s will, to have the probate of the estate removed to that court.
 

 On May 5, 2014, Chip and Minor moved the circuit court to disqualify Adams as a coexecutor of the estate, arguing as a basis for disqualification that Adams does not reside in Alabama. The circuit court set the motion for a hearing on May 27, 2014, and gave Adams “ten days to provide proof of his residency.” Petition, at Exhibit 5. On May 9, 2014, Chip and Minor moved the circuit court to prohibit Adams from retaining any third-party professionals, such as attorneys or CPAs, to assist with the administration of the estate, arguing that it was an unnecessary expense. The circuit court entered an order on that date, granting the motion and prohibiting any coexecutor or beneficiary from hiring such professional help “until further order” of the circuit court. The circuit court also set the issue for further discussion at the May 27 hearing.
 

 On May 16, 2014, Adams filed with the circuit court a statement of residency, acknowledging that “he currently resides in North Carolina”, but arguing that,
 

 “[cjontrary to the Motion to Disqualify Co-Executor filed by [Chip and Minor], out-of-state residency does not preclude [the] service of an executor appointed by
 
 *42
 
 Will. Rather, Ala.Code § 43-2-22 only imposes an in-state residency requirement upon administrators of intestate estates.”
 

 Petition, at Exhibit 13. Also on Máy 16 Colley resigned as coexecutor of the estate, stating that he did not have time to fulfill his duties as coexecutor and noting that “[he] ha[d] been informed by Chip Cleveland, son of [Cleveland], that [Chip] is -willing to assume the role of [c]o-[e]xec-utor.” Petition, at Exhibit 10. That same day, Chip moved the circuit court to substitute him in Colley’s place as coexecutor or, in the alternative, to appoint-him as a coexecutor of the estate. The circuit court granted that motion and appointed Chip coexecutor on May 19, 2014.
 

 Adams objected to the substitution of Chip as coexecutor, arguing:
 

 “Neither the [w]ill nor Alabama law provides any basis for the substitution of an unnamed co-executor in the place of a co-executor who resigns his appointment. Rather, as a matter of law, the sole remaining co-executor is vested with full authority to act on behalf of the estate. A court may only appoint a substitute personal representative when
 
 all
 
 of the designated co-executors are unable to serve.”
 

 Petition, at Exhibit 16. The circuit court “noted” Adams’s objection but took no further action with regard to Chip’s appointment.
 

 On May 23, 2014, Adams moved the circuit court to compel Chip and Minor “to produce all materials within their possession concerning the assets and liabilities of the [e]state,” petition, at Exhibit 19; to remove Chip as coexecutor; and to impose sanctions against Chip and Minor. With regard' to the latter, Adams argued that Chip and Minor had “obtained] the appointment [of Chip as coexecutor] through misrepresentations of law and fact.” Petition, at Exhibit 20.
 

 On May 26, 2014, Chip and Minor supplemented their motion to disqualify Adams, adding an argument that Adams had not timely administered the estate. A hearing was held on May 27, and on May 28 Adams submitted a response to the supplemental motion to disqualify him as coexecutor. On May 29, 2014, Chip and Minor moved the circuit court to compel Adams to produce certain documents related to the administration of the estate. That same day Adams moved the circuit court to require Chip to post bond as a coexecutor. The parties filed responses to those respective motions. On June 5, 2014, Adams supplemented his motion to require Chip to post a bond. It appears that there has been no ruling on those motions.
 

 On June 6, 2014, Adams petitioned this Court for mandamus relief from the circuit court’s May 9 order prohibiting Adams from hiring attorneys or other professionals to assist with the administration of the estate and from the May 19 order appointing Chip as coexecutor of the estate. Adams also asks this Court to instruct the circuit court to “direct [Chip and Minor] to produce all materials within their possession that would reflect upon the assets and liabilities of the [e]state,” petition, at 5, and “to enter sanctions against [Chip and Minor] for the amount of attorneys’ fees and costs determined to have been the result of the ... improper attempts to usurp control over the [e]state from Adams and/or Adams’ administration of the [e]state.” Petition, at 22. Adams also moved this Court for an emergency stay of the order appointing Chip as a coexecutor of estate.
 

 On June 13, 2014, Chip moved for sanctions against Adams, arguing that Adams had presented “willful and gross false
 
 *43
 
 hoods set forth in documents before [the circuit court],” including, among others, that Chip and Minor had pressured Colley to resign as coexecutor. On June 20, 2014, this Court issued a stay of the order appointing Chip coexecutor and of “all proceedings in the case generally ... pending further order of this Court” and ordered answer and briefs to be filed as to Adams’s petition for mandamus relief.
 

 Discussion
 

 “It is well settled that a writ of mandamus will issue where the petitioner demonstrates ‘ “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” ’ ”
 

 Toler v. Murray,
 
 886 So.2d 76, 78 (Ala.2004) (quoting
 
 Ex parte Fontaine Trailer Co.,
 
 854 So.2d 71, 76 (Ala.2003), quoting in turn
 
 Ex parte State ex rel. C.M.,
 
 828 So.2d 291, 293 (Ala.2002)).
 

 Adams first argues that “[he] has a clear legal right to have Chip Cleveland removed as co-executor of the estate.” Petition, at 6. Adams argues that the circuit court erred in granting Chip and Minor’s motion to substitute Chip as coexecutor of the estate in place of Colley because, Adams argues, “there simply was no legal or factual basis to support the appointment of Chip in that capacity.”
 
 Id.
 
 Adams argues that the will named Colley and Adams as coexecutors of the estate and did not provide for substitution or for the appointment of a successor coexecutor. Adams notes that, pursuant to § 43-2-847, Ala.Code 1975, following Colley’s resignation Adams has full authority to administer the estate. Section 43-2-847 provides: “Unless the terms of the will otherwise provide, every power exercisable by personal co-representatives may be exercised by the one or more remaining after the appointment of one or more is terminated....”
 
 [1]
 

 Adams also argues that under Alabama’s statutory scheme “there is no recognized position of ‘substitute executor.’ Rather, when none of the originally named executors remain[s] to serve, a court must issue ‘letters of administration with the will annexed.’ Authority thus would be vested in an ‘administrator’ rather than an ‘executor.’ ” Petition, at 9 n. 1. Adams cites §§ 43-2-27 and 43-2-272, Ala.Code 1975, in support of this argument. Section 43-2-27 provides, in pertinent part:
 

 “If no person is named in the will as executor,
 
 or if named executors,
 
 one or more,
 
 all
 
 renounce or fail to apply within 30 days after probate or are unfit persons to serve, the residuary legatee, or if he fails to apply within such time, refuses to accept or is unfit to serve, then the principal legatee, is entitled to letters of administration, with the will annexed .... ”
 

 (Emphasis added.) Section 43-2-272(a), Ala.Code 1975, provides: “If the sole executor or
 
 all the executors
 
 die, resign or are removed, the probate court having jurisdiction of the estate must grant letters of administration, with will annexed, to the person entitled thereto under section 43-2-27.” (Emphasis added.)
 

 Chip and Minor responded by arguing that the circuit court acted within its discretion in appointing Chip as coexecutor in place of Colley. They cite
 
 Jones v. McGuirt,
 
 416 So.2d 970 (Ala.1982), for the proposition that “this Court has approved
 
 *44
 
 the appointment of successive executors where a prior executor was either unavailable or unfit to serve.” Chip and Minor’s brief, at 6. However,
 
 Jones
 
 involved the removal of the sole executor named in the will, not the resignation or removal of a coexecutor. Moreover, this Court in
 
 Jones
 
 did not “approv[e] the appointment of successor executors”; it instead affirmed orders entered by the circuit court removing Jones as an executor and as a trustee of Glenn W. Anthony’s estate and appointing a successor trustee. See
 
 Jones,
 
 416 So.2d at 971. Our decision in
 
 Jones
 
 does not indicate that a successive executor was appointed for Anthony’s estate. Thus, Chip and Minor’s reliance on
 
 Jones
 
 is misplaced.
 

 Chip and Minor also argue that “where a court makes an appointment of an executor or an administrator of an estate, such is prima facie evidence that there was a vacancy.” Chip and Minor’s brief, at 6 (citing
 
 Sims v. Waters,
 
 65 Ala. 442, 443 (1880), and
 
 Morgan v. Casey,
 
 73 Ala. 222, 225 (1882)). However,
 
 Sims
 
 and
 
 Morgan
 
 address the appointment of administrators
 
 de bonis
 
 non
 
 [2]
 
 where the administration of an intestate estate had been left vacant. Those cases do not address whether a substitution can be made if one coexecutor among others named in a will resigns, nor do they provide for the appointment of a successor executor even if all named executors are removed. Thus, those cases do not support the circuit court’s decision to appoint Chip to serve in Colley’s place as coexecutor of the estate.
 

 Chip and Minor also cite
 
 Smith v. Alexander,
 
 148 Ala. 554, 42 So. 29 (1906), for the proposition that “an appointment of an executor will be upheld unless it plainly appears the appointing court had no jurisdiction.” Chip and Minor’s brief, at 7. Again, however, Chip and Minor’s reliance on
 
 Smith
 
 is misplaced.
 
 Smith
 
 involved the appointment of an administrator
 
 de bonis non,
 
 not the substitution of a coexec-utor. Moreover, the question in
 
 Smith
 
 was whether the jurisdiction of the probate court had been properly invoked with regard to the removal of an administrator and the appointment of an administrator
 
 de bonis non
 
 in his place. Neither party in this ease has challenged the jurisdiction of the circuit court. Thus,
 
 Smith
 
 does not justify the circuit court’s appointment of Chip as coexecutor, and Chip and Minor have cited no relevant authority to support their argument that the appointment of an executor must be upheld unless the appointing court lacked jurisdiction.
 

 Chip and Minor also argue:
 

 “[The circuit court] had the discretion to interpret [Cleveland’s] Will. It is well settled that the touchstone of the construction of a will is to find the testator’s intention, which is accomplished by considering all the provisions therein.
 
 Lowrey v. McNeel,
 
 773 So.2d 449, 453 (Ala.2000). In naming [c]o~[e]xecutors within [Cleveland’s] will, [Cleveland] selected his long time law partner, Louis C. Colley, and his business partner, Raymond Adams.
 

 “[Cleveland] therefore nominated and appointed one local in-state citizen, Louis C. Colley, to coordinate efforts with the out of state resident, Raymond Adams, in the administration of the Estate. It seems [Cleveland’s] intention was to have a local resident attorney, familiar with the Estate’s local presence, to carry out the duties of management.”
 

 Chip and Minor’s brief, at 7-8.
 

 However,
 

 
 *45
 
 “ ‘ “[t]o determine the intent of a testator or testatrix, the court must look to the four corners of the instrument, and if the language is unambiguous and clearly expresses the testator’s or testatrix’s intent, then that language must govern.”
 
 Born v. Clark,
 
 662 So.2d 669, 671 (Ala.1995).’ ”
 

 Beasley v. Wells,
 
 55 So.3d 1179, 1184-85 (Ala.2010) (quoting
 
 Cottingham v. McKee,
 
 821 So.2d 169, 171-72 (Ala.2001)). Neither side argues that Cleveland’s will is ambiguous, and none of the provisions of that will indicates that Cleveland’s reason for nominating Colley as coexecutor was to ensure that a local attorney would assist with the management of his estate. Moreover, Cleveland’s will does not provide for the substitution or appointment of a successor to the named coexecutors. Thus, “look[ing] to the four corners of the instrument,” i.e., the will, we cannot say that Chip’s appointment as coexecutor is consistent with the testator’s intent or that the circuit court’s appointment of Chip is justified on that basis.
 

 Chip and Minor also argue:
 

 “The [circuit] court had reason to appoint Chip Cleveland as a local resident substitute [c]o-[e]xecutor, as Raymond Adams’ own status as a qualified [e]o-[e]xecutor remained in question under law before the trial court. [Adams] is disqualified to be a [c]o-[e]xecutor under § 43-2-22 of the Code of Alabama.”
 

 Chip and Minor’s brief, at 9. Section 43-2-22, Ala.Code 1975, provides, in pertinent part:
 

 “(a) No person must be deemed a fit person to serve as executor who is under the age of 19 years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence or want of understanding, is incompetent to discharge the duties of the trust. Nor shall any nonresident of the state be appointed as administrator unless he is at the time executor or administrator of the same estate in some, other state or territory or jurisdiction, duly qualified under the laws of that jurisdiction.”
 

 Chip and Minor argue:
 

 “This Court [has] held [that] § 43-2-22 applies to both the qualifications of executors as well as administrators in the probate of estates.
 
 Burnett v. Garrison,
 
 75 So.2d 144, 148 (Ala.1954). Additionally, this Court has stated ‘[w]e recognize that the disqualification statute (§ 43-2-22) uses only the word “executor” and that this Court, as far back .as the case of
 
 Williams v. McConico,
 
 27 Ala. 572 (1855), has applied this disqualification statute to administrators also.’
 
 Ex parte Holladay,
 
 466 So.2d 956, 960 (Ala.1985). This Court likewise determined § 43-2-22 is controlling on the fitness of an executor named in a will, and therefore controls whether petitioner is a fit executor of the Estate.
 
 Riley v. Wilkinson,
 
 23 So.2d 582, 589 (Ala.1945).”
 

 Chip and Minor’s brief, at 9-10.
 

 Chip and Minor’s arguments in this regard are disingenuous at best. Although
 
 Ex parte Holladay,
 
 466 So.2d 956 (Ala.1985),
 
 Burnett v. Garrison,
 
 261 Ala. 622, 75 So.2d 144 (1954), and
 
 Riley v. Wilkinson,
 
 247 Ala. 231, 23 So.2d 582 (1945), do indicate that the disqualifications listed in § 43-2-22 for executors also apply to administrators, those cases do not hold that the two terms are interchangeable for the purposes of that statute or that executors are subject to the nonresident restriction set forth in § 43-2-22 for administrators. In fact, as Adams argues, § 43-2-191, Ala. Code 1975, expressly allows a nonresident to serve as an executor in Alabama: “Judges of probate are authorized to issue letters testamentary to persons named as executors in wills regularly probated who
 
 *46
 
 are nonresidents of this state, upon like bond and surety and upon the same terms, conditions and requirements as are required by law of citizens of this state.”
 

 Chip and Minor argue that, “ [historically, § 43-2-22 has been used for the removal of out of state executors by the language of this Court.” Chip and Minor’s brief, at 10 (citing
 
 Harris v. Dillard,
 
 31 Ala. 191, 192 (1857)). However, at the time
 
 Harris
 
 was decided, in 1857, the Alabama Code expressly included nonresi-dence among the disqualifications for executors. See Ala.Code 1852, § 1658 (“No person must be deemed a fit person to serve as executor: ... [w]ho is not an inhabitant of this state.”). By 1876, however, that disqualification no longer applied to executors. Ala.Code 1876, § 2340 (“No person must be deemed a fit person to serve as executor — 1. Who is under the age of twenty-one years. 2. Who has been convicted of an infamous crime. 3. Who, from intemperance, improvidence, or want of understanding, is incompetent to discharge the duties of the trust.”); Ala.Code 1876, § 2379 (“Judges of probate are authorized to issue letters testamentary to persons named as executors in wills regularly probated, who are or may be nonresidents of this state, upon like bond and security, and upon the same terms, conditions and requirements as are required by law of citizens of this state”). Thus, Chip and Minor have not demonstrated that Adams is disqualified from acting as coex-ecutor under the will on the basis of non-residence.
 

 In light of the statutory authority cited by Adams in support of his argument that the circuit court erred in appointing Chip as coexecutor in place of Colley and the apparent lack of authority supporting that appointment, we agree with Adams that he has a clear legal right to have Chip removed as coexecutor. However, to be entitled to a writ of mandamus as to this issue at this time, Adams must show not only that he has a clear legal right to the relief requested, but he must also show “an imperative duty upon the respondent to perform,
 
 accompanied by a refusal to do so.” Toler,
 
 886 So.2d at 78 (emphasis added). See also
 
 Ex parte Barnett,
 
 858 So.2d 948, 949 (Ala.2003) (“Mandamus is an extraordinary writ, and will issue only when the petitioner has demonstrated that, among other things, ‘the respondent has an imperative duty to perform and has
 
 refused to do so.’
 
 ” (quoting
 
 Ex parte Flint Constr. Co.,
 
 775 So.2d 805, 808 (Ala.2000))).
 

 As noted previously, Adams filed a motion on May 23 asking the circuit court to remove Chip as coexecutor. The circuit court has not, as yet, ruled on that motion, which was filed only two weeks before Adams filed his mandamus petition with this Court on June 6, and proceedings have been stayed in the circuit court since June 20, 2014.
 

 Adams does not directly address this prong of the mandamus standard in his petition. He does argue at one point that “[i]t appears that the trial court is electing to ignore all filings submitted by Adams,” petition, at 16 n. 3, noting that the circuit court has promptly responded to each motion filed by Chip and Minor but has not ruled on any of Adams’s affirmative pleadings. We find this alleged difference in treatment troubling, but we cannot say at this time that the circuit court has “ignore[d]” Adams’s motions or that the circuit court has refused to act on Adams’s request to remove Chip as coexecutor. Thus, although we agree that the circuit court erred in appointing Chip as coexecutor, we decline to issue a writ of mandamus with regard to that appointment
 
 at this time.
 
 See
 
 Ex parte Barnett, supra.
 

 We decline to grant Adams’s other requests for mandamus relief on the same
 
 *47
 
 basis. Adams argues that “[he] has a clear legal right to retain third-party professionals to assist with estate administration,” petition, at 11, and that “the trial court should be directed to withdraw its May 9, 2014 [o]rder that prohibits Adams from obtaining the assistance of attorneys and accountants.” Petition, at 14. However, it appears that Adams has not moved the circuit court to “withdraw” its May 9 order. He did argue in his motion to remove Chip as coexecutor and to impose sanctions against Chip and Minor that Chip’s motion to prohibit the hiring of such assistance was due to be denied. As noted previously, the circuit court has not ruled on that motion. Moreover, as Adams himself acknowledges, the circuit court set the question of hiring third-party professionals for the May 27 hearing. No action has been taken since that hearing, but, as noted, Adams filed his petition for mandamus relief on June 6, only 10 days after the May 27 hearing, and this Court stayed proceedings in the circuit court on June 20. Even assuming that Adams has a clear legal right to have the May 9 order vacated, he has not demonstrated that the circuit court has refused a request to so act.
 

 Similarly, Adams argues that “[he] has a clear legal right to obtain all estate property and records in [Chip and Minor’s] possession,” petition, at 14, and that he is entitled to sanctions against Chip and Minor. The circuit court has not yet ruled on either of those motions. Adams argues: “To date, the [circuit] court has taken no action upon Adams’fs] request to be provided materials under Ala.Code [1975,] § 43-2-837. Through its silence, the trial court effectively has denied Adams access to those materials.” Petition, at 15. However, the motion to compel and the request for sanctions were filed on May 23. Adams’s petition for mandamus relief was filed on June 6, just two weeks later. Adams has cited no authority — and we know of none — indicating that the failure to rule on a motion within two weeks of its being filed constitutes a denial of that motion. With these grounds for mandamus relief, as with Adams’s argument regarding the removal of Chip as coexecutor, he has not met his burden to “demonstrate[ ] that, among other things, ‘[the circuit court] ha[d] an imperative duty to perform and has
 
 refused to do so.’ ” Ex parte Barnett,
 
 858 So.2d at 949. Thus, Adams is not entitled to mandamus relief in this regard as well.
 

 Conclusion
 

 We agree with Adams that the circuit court erred in substituting Chip as a coex-ecutor of Cleveland’s estate. However, because the circuit court has not yet ruled on Adams’s motion to remove Chip as coexec-utor, Adams has not demonstrated that the circuit court has refused to perform an imperative duty. See
 
 Ex parte Barnett, supra.
 
 Similarly, Adams has not demonstrated that, at this time, he is entitled to a writ of mandamus, directing the circuit court to vacate its May 9 order, which prohibits the hiring of an accountant or an attorney to assist with the administration of the estate, or directing the circuit court to grant his motions to compel production of estate property and assets and to impose sanctions against Chip and Minor. Therefore, we deny Adams’s petition for mandamus relief. We further lift the stay of proceedings in the circuit court and encourage the circuit court to address the pending motions expeditiously.
 

 PETITION DENIED.
 

 PARKER, MURDOCK, and SHAW, JJ., concur.
 

 MOORE, C.J., and STUART, BOLIN, and MAIN, JJ., concur in the result.
 

 [1]
 

 . An executor is included in the definition of "personal representative" set forth in § 43-2-691, Ala.Code 1975.
 

 [2]
 

 . An “administrator
 
 de bonis non
 
 ” is “[a]n administrator appointed by the court to settle the remainder of an intestate estate not set-tied by an earlier administrator or executor.”
 
 Black's Law Dictionary
 
 54 (10th ed.2014).