The dispositive issue on this appeal is whether the trial judge, the probate judge of Mobile County in this instance, erred in considering extrinsic evidence to determine the intent of the testator in using the terms "cash" and "personal property" in his will.
Carl T. Martin died testate on March 1, 1976. His will, dated November 25, 1975, naming his only child, Carla Martin Ethridge, executrix, was duly admitted to probate in the Probate Court of Mobile County. Carla was also named co-trustee under the trust provisions of the will, and was duly appointed and served as executrix until her resignation just prior to the hearing that formed the basis for this appeal. The successor executor named in the will, The First National Bank of Mobile, was then duly appointed. Counsel for the bank filed a petition for "construction" of the will and for "instructions" in the administration thereof. The petition in part requested the court to construe certain portions of the will, which was done in the Decree of Construction and Instructions issued on April 7, 1981. At the same time, the court issued an Opinion and Order on Final Settlement which adjudicated Carla's petition for final settlement of her portion of the administration of the estate.
The pertinent parts of the will read as follows:
"ARTICLE ONE
 "I, CARL T. MARTIN, direct that my Executrix, hereinafter named, pay out of my estate all of my just debts which are valid and enforceable at the time of my death; including the expenses of my last illness and funeral expense, and expenses for a suitable monument to be placed at the foot of my grave site, as soon as practicable after my death.
"ARTICLE TWO
 "I give and bequeath to my sister, CAROLEE MARTIN, the sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars cash; and to my niece LANNIE MARTIN, the sum of Five Hundred and No/100 ($500.00) Dollars cash; and to my sister-in-law, THELMA POWELL, the sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars cash; and to W.R. (Billy) Thompson, the sum of Three Hundred Fifty and No/100 ($350.00) Dollars cash.
"ARTICLE THREE
 "I, CARL T. MARTIN, give and bequeath all cash
remaining (after the payment *Page 252 
of specific bequeaths as per Article Two of this my Last Will Testament) to my daughter, CARLA MARTIN ETHRIDGE.
"ARTICLE FOUR
 "I, CARL T. MARTIN, give and bequeath all cars, trucks, and items of household property, personal property, and other items of personal property used in my every day life to my daughter, CARLA MARTIN ETHRIDGE.
 "I hereby vest in my Executrix, hereinafter named, full power and authority to determine what objects of property are included in the foregoing description contained in this section of my Last Will 
Testament.
"ARTICLE FIVE
 "All of the rest, residue and remainder . . ." (Emphasis added.)
The Court, in his "Decree of Construction and Instructions" held:
 "The Court in construing the terms `cash' and `personal property' in Articles Three, Four and Five of the Will of Carl T. Martin, deceased, considered testimony that Carla Martin was a Heroin Addict, that she had served penitentiary time in connection with this addiction, that she had forged endorsements on some estate account checks which were presented in evidence, that she was, at the time of trial, living with a common law husband, and that her child (a daughter who was thirteen years of age at the time of trial) had been in the care of a foster parent (Lena Watt) since the age of two years; that the Court also considered Carla Martin's evasive, argumentative demeanor at trial, that likewise, in construing the terms `cash' and `personal property' in these articles of the Will, the Court considered the fact of the Will itself; and, over timely objections interposed by Carla Martin, the Court admitted and considered the testimony of Mr. Chandler Kite Stanard that he drafted the Will of the decedent Carl Martin, that said decedent had told Mr. Stanard of the decedent's intentions at the time of this drafting, that said decedent intended to leave or bequeath Carla Martin under Articles Three, Four and Five only his checking accounts, savings accounts and cash (currency), and that said decedent did not intend to leave Carla Martin the savings certificates, certificates of deposit, stocks, bonds, treasury bills, promissory notes and contracts for the sale of real property; that the grounds of Carla Martin's said objections were, first, that Mr. Stanard's said testimony was hearsay, and, second, that such oral testimony was not admissible to contradict the unambiguous terms of the Will; that after Mr. Stanard's testimony to such effect, Carla Martin timely moved to strike said testimony upon the same grounds; and the Court denied said motion. . . .
 "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that upon construing the same, the Court finds as follows:
 "1. That under Item 3, the term `Cash' is interpreted to include, checking accounts, savings accounts, and cash; and does not include certificates of deposit, savings certificates, shares of stocks, bonds, treasury bills, promissory notes and/or contracts for the sale of real property.
 "2. That the term `Cash' under Article 3 is interpreted to include the accounts in the name of Jesse A. Martin. (sic) at the time of Carl T. Martin's death, shall include checking accounts, savings accounts and cash, and does not include certificates of deposit, savings certificates, shares of stocks, bonds, treasury bills, promissory notes and/or contracts for the sale of real property.
 "3. That the term `Cash' under Article Three of said decedent's will is interpreted and shall be measured before and after the payment of the estate debts, administration expenses and taxes.
 "4. That the terms `personal property' as contained in Article Four of the last will and testament of said decedent's will is interpreted to include personal effects *Page 253 
and personal property used in his every day life."
As previously mentioned, the crucial question is whether the probate judge should have considered extrinsic evidence in determining the testator's intent. The beneficiary, Carla Martin, contends that the will is not ambiguous and that the judge erred. Appellees contend that the trial judge did not err because the will contains a latent ambiguity in Article Four, because the words "personal property" are used there in a provision which "is often used in wills for the purpose of disposing of a testator's personal effects, or non-business personal property used in his everyday life."
The First National Bank of Mobile argues for an affirmance of the court's interpretation, as follows:
 "The Court's construction of Article Four is supported by a number of factors. Reading the Will as a whole and, in particular, the reference to personal property in Article Five, a reasonable construction is that Article Four relates only to personal effects. Article Five devises and bequeaths the residue, including `all . . . property, real, personal, and mixed, of whatever kind and wherever situated.' (emphasis added) If, as Appellant urges, the Testator bequeathed all personal property of whatever kind and form under Article Four, then the reference to personal property in Article Five would have been a nullity. However, it is well-settled that the Court should give effect to each provision of the Will, if possible. Smith v. Smith, 387 So.2d 134
(Ala. 1980); Cates v. Bush, 295 Ala. 256, 326 So.2d 742 (1976). Therefore, in construing Article Four to bequeath only personal effects, the Court properly gave effect to the residual bequest of personal property under Article Five.
 "A second factor in support of the Court's construction of Article Four is the rule ejusdem generis. This rule may be utilized under certain circumstances to restrict the general terms of a bequest by association with enumerated words of narrower import. Merchants National Bank v. Hubbard, 220 Ala. 372, 125 So. 335 (1929). The rule may be applied to Article Four where the term `personal property' is preceded by the narrower terms `cars, trucks and items of household property' and followed by the phrase `other items of personal property used in my every day life.' Application of the rule results in the restriction of Article Four to personal effects, as determined by the Court."
The bank's argument would have more persuasive force but for the fact that the testator, in the will now under consideration, vested in his daughter, as executrix, the following powers:
 "I hereby vest in my Executrix, hereinafter named, full power and authority to determine what objects of property are included in the foregoing description contained in this section of my Last Will Testament." (Emphasis added.)
Whatever application the rule of ejusdem generis otherwise has in construing testamentary intent, it cannot narrow the legal definition of "personal property," especially when "full power and authority to determine what objects of property are included" is specifically vested in another, such as the executrix in this case.
The bank's argument that the gift of "personal property" in Article Five to the residuary estate is a nullity if the will is not construed as the judge construed it, needs to be addressed and we hereby address it. The argument of the bank would have some validity, but for the fact that the executrix has full power to determine which items pass under Article Four. The executrix, exercising the power granted to her under Article Four, could determine that the testator did not intend to give her certain items of personal property. In that event, the "personal property" she deemed did not pass under Article Four would pass to the residuary estate under Article Five. Also, there could be lapses of specific bequests.
The law states that the Court will not look beyond the "four corners of the instrument" unless latent ambiguities exist. *Page 254 Achelis v. Musgrove, 212 Ala. 47, 101 So. 670 (1924); Gotliebv. Klotzman, 369 So.2d 798 (Ala. 1979). We have applied that rule here. We have examined the "four corners of the instrument" without considering the extrinsic evidence, and we find no latent ambiguity. The words "personal property," when used as they are used in this will, could create a latent ambiguity, but for the fact that the testator specifically gave "full power" to his executrix to determine what property was included within the bequest under Article Four. Consequently, there is no room for construction. The will will be taken as written. Gotlieb v. Klotzman, supra. We hold, therefore, that the judge incorrectly admitted and considered extrinsic evidence in determining testator's intent, and because he erred, his judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES and BEATTY, JJ., concur.